2020 IL App (1st) 190544

SIXTH DIVISION
June 26, 2020

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

No. 1-19-0544

SCOT VANDENBERG and PATRICIA VANDENBERG, )
           Plaintiffs-Appellees, )
v. )
RQM, LLC; BRUNSWICK CORPORATION; and )
BRUNSWICK BOAT GROUP, a Division of Brunswick )
Corporation, )
           Defendants, )
(McNabola Law Group, P.C., Appellant). )

Appeal from the
Circuit Court of
Cook County.

No. 10 L 003188

Honorable
James N. O'Hara,
Judge Presiding.

PRESIDING JUSTICE MIKVA delivered the judgment of the court, with opinion.
Justice Cunningham concurred in the judgment and opinion.
Justice Gordon specially concurred, with opinion.

**OPINION**

¶ 1    Appellant, McNabola Law Group, P.C. (MLG), appeals the circuit court's order granting plaintiffs Scot Vandenberg and Patricia Vandenberg's motion to adjudicate attorney liens. The circuit court adjudicated those liens to zero dollars, effectively extinguishing the liens and denying MLG's petition for fees and expenses outright. On appeal, MLG contends that the circuit court erred because (1) under the theory of *quantum meruit*, MLG is legally entitled to fees equal to one-

third of the settlement amount (less the amount, based on hours expended and a reasonable hourly rate, that should be awarded to the Vandenbergs' new counsel) and (2) neither the fact that MLG was discharged for cause nor the circuit court's finding that the firm breached its fiduciary duties to the Vandenbergs provided a legal basis for forfeiture of the fees MLG was otherwise entitled to. MLG also argues that there was no basis for the circuit court to deny the properly documented expenses it incurred in this case and additionally seeks payment of $111,715.47 that it claims it is still owed for settlement of the Vandenbergs' claim against RQM, LLC (RQM). For the following reasons, we affirm but modify the order of the circuit court to include both an award of expenses and payment of the $111,715.47 from the RQM settlement to MLG.

¶ 2                                     I. BACKGROUND

¶ 3      MLG's fee request is for work performed while the firm represented the Vandenbergs in their negligence and strict liability action against defendants Brunswick Corporation and Brunswick Boat Group (collectively, Brunswick), and RQM. A history of the litigation is included in our opinion resolving an earlier appeal in this case. See *Vandenberg v. Brunswick Corp.*, 2017 IL App (1st) 170181. We will set out those facts that are relevant to this appeal.

¶ 4                          A. MLG's Retainer Agreement

¶ 5      In September 2010, the Vandenbergs retained MLG (known at the time as Cogan & McNabola, P.C.) to represent them. The firm's retainer agreement provided that, as compensation for its services, MLG would receive a contingency fee of 33.33% of the monies recovered if the case settled before a lawsuit was filed and 40% if a lawsuit was filed or if the case was sent to arbitration. It provided that the Vandenbergs would pay actual expenses incurred by the firm, "regardless of the outcome of the cause." The agreement also provided as follows:

"In the event that I request COGAN & MCNABOLA, P.C. to withdraw as my attorney

prior to the resolution of my claim, suit, settlement, or otherwise, I hereby agree to pay COGAN & MCNABOLA, P.C., at the rate of four hundred fifty dollars ($450.00) per hour or their customary hourly rate for the time which they have spent in connection with my claim, or thirty-three and one-third percent (33 1/3%) of the amount being offered by parti(es) responsible and or their insurers at the time of request to withdraw, whichever is greater."

¶ 6                          B. Events Preceding MLG's Termination

¶ 7     Scot Vandenberg was seriously injured when he fell from the upper deck of a yacht and broke his neck. The accident rendered him a quadriplegic. Brunswick manufactured the yacht, and RQM owned and operated it. The Vandenbergs settled with RQM and proceeded to trial only against Brunswick.

¶ 8     On June 9, 2015, after a three-week trial, the parties presented closing arguments, and the case was submitted to the jury. While the jury deliberated, Brunswick's representative, Charles Patitucci, extended to Mr. McNabola an offer to settle the Vandenbergs' claims for $25 million. Mr. McNabola informed the Vandenbergs of the offer, and at 3:40 p.m. the Vandenbergs told Mr. McNabola to accept it.

¶ 9     At 3:52 p.m., before Mr. McNabola informed Brunswick of the Vandenbergs' acceptance, he received a call from Tatianna Agee, Judge Elizabeth M. Budzinski's clerk. Ms. Agee told Mr. McNabola that the jury had sent out a note asking "CAN WE FIND FAULT WITH RQM, WITHOUT FINDING FAULT WITH BRUNSWICK?" Brooke Reynolds, a student extern for Judge Budzinski, was in the room when Ms. Agee made the call. Ms. Reynolds overheard Ms. Agee disclose the contents of the note in a hushed voice. Ms. Agee explained to Ms. Reynolds that she wanted to "give the Vandenbergs a little more of an opportunity to settle or figure the question

out before the defense." Ms. Agee said that Mr. McNabola told her the answer to the jury's question was "no," but to "hold-off, don't do anything yet, I'm going to try to settle this."

¶ 10    Mr. McNabola, after trying unsuccessfully to reach Mr. Patitucci, spoke again to Ms. Agee at around 4:01 p.m., telling her that he could not get a hold of the person he needed to speak to about the settlement. He asked for further instructions and Ms. Agee told him that Judge Budzinski wanted the parties to return to court. Mr. McNabola called Brunswick's lead counsel, John Patton, and asked for Mr. Patitucci's cell phone number. He did not tell Mr. Patton that the jury had submitted a note, or that Ms. Agee had told him of the note's contents. Mr. McNabola reached Mr. Patitucci at 4:03 p.m. and—after learning that Mr. Patitucci's authority to settle was limited to the $25 million he had previously offered—accepted the offer. Mr. Patitucci gave no indication that he knew of the jury note or its contents. At 4:11 p.m., Mr. Patitucci called Mr. Patton and informed him of the settlement.

¶ 11    At 4:19 p.m., Ms. Agee called Mr. Patton and informed him that Judge Budzinski wanted the parties to come to court to discuss the jury note. This was the first Mr. Patton had heard of the jury note. Mr. Patton called Mr. Patitucci and told him that he would have someone "check into [the note]." This was also the first time Mr. Patitucci had heard of the note, and although he did not want to revoke the settlement based only on the fact that the jury sent out a note, he wanted to find out "[a]nything and everything about the note."

¶ 12    At approximately 4:40 p.m., Judge Budzinski informed the parties that the jury had sent out a note "at approximately 3:50 p.m." and she was surprised it took counsel so long to return to court after being notified. All counsel present viewed the jury note and its contents, including a handwritten notation that the note was "Rec'd 3:50 p.m." At 4:45 p.m. Mr. Patitucci was informed of the contents of the note and he called Mr. Patton. At 4:50 p.m., the settlement was entered on

the record in the presence of counsel and the case was dismissed.

¶ 13    Defense counsel requested that the jury be allowed to deliberate to verdict. Judge Budzinski instructed the jury to continue deliberations according to the instructions already given. The jury reached a verdict in favor of Brunswick at approximately 5 p.m. At this time, Mr. Patton asked to speak with Judge Budzinski and informed her that the settlement had occurred without him having knowledge of the jury's note. Only later did he learn of Ms. Agee's call to Mr. McNabola prior to the settlement. Mr. Patton requested an evidentiary hearing and the preservation of phone records and court materials. On June 12, 2015, Brunswick filed a motion to vacate the settlement on the grounds that it had been procured by fraud and mistake and for judgment to instead be entered on the jury's verdict.

¶ 14    Judge Budzinski recused herself and Judge Daniel J. Lynch was assigned to the case. MLG retained C. Barry Montgomery from the firm of Williams Montgomery & John to represent the Vandenbergs at this hearing. Although they were later waived, MLG originally attempted to treat the almost $600,000 in legal fees incurred by Mr. Montgomery and his firm as expenses chargeable to the Vandenbergs. MLG did not suggest to the Vandenbergs that they should retain or consult with independent counsel at this point or make them aware of any potential conflict between MLG and the Vandenbergs.

¶ 15    Judge Lynch held an evidentiary hearing on Brunswick's motion and, on January 19, 2016, issued an oral opinion rescinding the settlement agreement. He found that "[t]here [was] absolutely no dispute between the parties in this matter as to what Ms. Agee did or failed to do between 3:50 p.m. and 4:19 p.m. with the note and its contents." He also found that Ms. Agee was "clearly not a credible witness" when she denied she saw the jury note or that she revealed its contents to Mr. McNabola at 3:52 p.m. He found no agreement or conspiracy between Mr. McNabola and Ms.

Agee.

¶ 16    The court vacated the settlement on the grounds of fraud in the inducement, unilateral and mutual mistake, an absence of due process, and public policy. The jury that reached a verdict for the defense on June 9, 2015, was reconvened, and the jurors confirmed that they had reached a unanimous verdict in favor of Brunswick. At the hearing on Brunswick's motion to enter judgment on the verdict, the court found that the parties did not dispute "that the Vandenbergs did form the intent to accept this $25 million offer sometime around or shortly immediately after 3:40 p.m. Certainly neither side disputes the fact that they formed this intent to accept it prior to the 3:50 p.m. note perhaps, but certainly prior to the 3:52 phone call between Ms. Agee and Mr. McNabola." Although it found that the Vandenbergs had "clean hands" in the case, the court entered judgment in favor of Brunswick and against the Vandenbergs due to Mr. McNabola's conduct.

¶ 17    On January 29, 2016, Scot Vandenberg informed Mr. McNabola that he would seek a 30-day extension at the next court appearance in order to seek other legal counsel. The Vandenbergs discharged MLG by email on February 20, 2016, and retained their present counsel to represent them in proceedings going forward.

¶ 18             C. Reinstatement of the Settlement and Adjudication of MLG's Fees

¶ 19    Judge Lynch subsequently recused himself and the case was reassigned to Judge James N. O'Hara. The Vandenbergs, through their present counsel, filed a motion to vacate Judge Lynch's order and enforce the settlement. After briefing and oral argument, on December 20, 2016, Judge O'Hara found that "the settlement was entered into the record between 4:50 and 4:51 p.m." and immediately thereafter the court "entered an order dismissing the case pursuant to said settlement." Prior to the settlement being entered, at 4:40 p.m., the court found that "all parties were made

aware of the content of the jury's question and the time it was published. All parties had the opportunity to participate in a discussion as to how to respond to the note." Judge O'Hara further concluded:

> "The parties freely settled this case after full disclosure of all material information concerning the content and time of publishing the jury note. At no point did [Brunswick], through counsels, object to or question the validity of the settlement after learning of the content of the jury question contained in the note or the time it had come out prior to the settlement's entry into the record. Through this conduct, [Brunswick] manifested a consistent intention and willingness to agree and enter into the settlement and to its entry into the record and to the dismissal of the case pursuant to settlement."

Judge O'Hara vacated the judgment entered in favor of Brunswick and, to the extent that they were inconsistent with the vacatur, all orders entered after June 9, 2015. He then reinstated the settlement agreement. Brunswick appealed the judgment, and this court affirmed in *Vandenberg*, 2017 IL App (1st) 170181.

¶ 20 After reinstatement of the settlement, the Vandenbergs, again through their present counsel, filed a motion to adjudicate any claimed attorney's liens by MLG for fees and expenses. In the motion, they contended that Mr. McNabola engaged in misdeeds that resulted in the initial loss of the $25 million settlement with Brunswick and that to reward him with fees out of the reinstated settlement would be "wholly unfair and contrary to public policy." They also made various allegations about how he had handled the case prior to the settlement, including engaging counsel to perform various tasks without adequately advising the Vandenbergs or obtaining their consent and failing to adequately advise them about the potential conflict between them and MLG in the proceedings before Judge Lynch.

¶ 21    In response, MLG filed a petition for fees and expenses, contending that the firm was "entitled to a fee of one-third of $29.4 million [the $25 million settlement plus interest], minus the [present] Lawyer's *quantum meruit*, plus a deferred fee from the 2012 RQM settlement and reimbursement of [its] reasonable litigation expenses totaling $169,610.57."

¶ 22    The circuit court heard oral argument on the motions but did not hold an evidentiary hearing. The court determined that Mr. McNabola breached the fiduciary duties he owed the Vandenbergs by violating the rules of professional conduct in the following 11 specific ways: (1) improperly delegating his responsibilities and obligations to outside lawyers, (2) improperly charging the Vandenbergs for the outside lawyers' fees, (3) failing to properly inform the Vandenbergs of the retention of outside lawyers, (4) failing to abide by the Vandenbergs' instructions to settle their claim, (5) engaging in improper *ex parte* communications with a judicial employee, (6) failing to inform the Vandenbergs of the events of June 9, 2015, or that the settlement was in jeopardy, (7) improperly delegating his responsibilities to Mr. Montgomery posttrial, (8) failing to inform the Vandenbergs about the retention of Mr. Montgomery and billing the Vandenbergs for Mr. Montgomery's fees and expenses as case expenses without having them sign a separate fee agreement, (9) improperly charging Mr. Montgomery's legal fees as case expenses, (10) failing to inform the Vandenbergs that they could seek advice from independent counsel regarding posttrial matters, and (11) continuing his posttrial representation of the Vandenbergs in the face of an obvious conflict of interest. Regarding the attorney's lien, the court found that Mr. McNabola did not show actual notice to Brunswick and thus failed to establish an enforceable lien. The court also found that Mr. McNabola "failed to provide any evidence of the total number of hours his firm engaged in the underlying case, thus failing to properly plead and prove Quantum Meruit fees for his hourly rate." The circuit court denied Mr. McNabola's petition

for fees and adjudicated his lien to "zero dollars." This appeal followed.

¶ 23                            II. JURISDICTION

¶ 24     The circuit court entered its order on March 5, 2019. MLG filed its notice of appeal on March 14, 2019. This court has jurisdiction pursuant to Illinois Supreme Court Rule 301 (eff. Feb. 1, 1994) and Rule 303 (eff. July 1, 2017), governing appeals from final judgments by the circuit court in civil cases.

¶ 25                            III. ANALYSIS

¶ 26     Before proceeding with our analysis, a few introductory remarks are necessary. The parties agree that the present fee dispute involves whether and how to distribute the contingency fee portion of the $25 million settlement in this case. This is primarily a dispute between MLG and the Vandenbergs' present counsel, as only a small portion of the fees and expenses that MLG has sought would come from the Vandenbergs themselves, who have already received their share of the settlement funds.

¶ 27     It also bears noting that although MLG acknowledges that our review of a circuit court's award or denial of attorney fees is typically for an abuse of discretion, almost all of its arguments on appeal are that it was not barred, as a matter of law, from receiving fees in this case. Although we review these legal arguments *de novo* (see *Nolan v. Weil-McLain*, 233 Ill. 2d 416, 429 (2009)), in our view, none of them is dispositive. We agree that MLG was not barred from receiving fees and are left to consider whether, under the circumstances of this case, the circuit court's decision to award no fees at all was an abuse of discretion. We do not think it was and, for the reasons discussed below, affirm.

¶ 28     Although for most of their arguments on appeal the parties proceed as if the retainer agreement between MLG and the Vandenbergs ceased to have any legal effect upon MLG's

termination, we are of the view that the circuit court's decision can also be upheld on the alternative—and purely legal—basis that the provisions of the retainer agreement do in fact control here. Those provisions expressly provided for what fees would be paid if, as occurred in this case, MLG was discharged. Under the agreement, MLG's fees would have been based on the hours it expended in this case multiplied by a reasonable hourly rate. MLG does not dispute the circuit court's finding that it failed to provide any evidence of how much time it spent working on this case. Nor does MLG offer any answer to the Vandenbergs' argument that it thereby forfeited any right to compensation on an hourly basis for the time expended.

¶ 29     Finally, we note that MLG filed a motion in this court to strike certain sections of the Vandenbergs' brief on appeal, together with a supplement to that motion, which we took with the case. In the motion, MLG contends that the "Nature of the Case" section of the Vandenbergs' brief contains "argument, innuendo, and inflammatory rhetoric" in violation of Illinois Supreme Court Rule 341(h)(2) (eff. May 25, 2018) and the "Statement of Facts" section misrepresents certain facts and asserts others as "undisputed" that are, in fact, hotly contested.

¶ 30     "[S]triking a brief is appropriate only when the violations of the rules hinder our review." *Affiliated Health Group, Ltd. v. Devon Bank*, 2016 IL App (1st) 152685, ¶ 15. We believe that the record in this case is clear, and we decline to strike any portion of the Vandenbergs' brief. But we do agree with MLG that a number of the factual statements in the Vandenbergs' brief are either unsupported by citations to the record or flatly contradicted by the record. Most of these statements, which appear designed only to persuade this court of wrongdoing by Mr. McNabola, do nothing to further an appropriate resolution of this case. We have disregarded improper argument and factual assertions that are not fully supported by the record and caution the Vandenbergs' appellate counsel to refrain from such conduct in the future.

¶ 31                    A. The Circuit Court Did Not Abuse Its Discretion

¶ 32    It is well-settled that "[a] trial court has broad discretionary powers in awarding attorney fees, and its decision will not be reversed on appeal unless the court abused that discretion." *Weidner v. Szostek,* 245 Ill. App. 3d 487, 493 (1993) (citing *In re Estate of Callahan,* 144 Ill. 2d 32, 43-44 (1991)); see also *DeLapaz v. Selectbuild Construction, Inc*., 394 Ill. App. 3d 969, 972 (2009) (applying an abuse of discretion standard to the very question that is presented here—how fees should be allocated between a discharged and a successor law firm). As we noted in *DeLapaz*, such an award should be reversed only if "no reasonable person would take the view adopted by the trial court." (Internal quotation marks omitted.) *DeLapaz*, 394 Ill. App. 3d at 972.

¶ 33    Judge James O'Hara, the circuit court judge who ruled on this fee petition, is the same judge who reinstated the settlement in favor of the Vandenbergs. After that ruling was affirmed by this court, there were numerous court appearances, motions, and hours of arguments related to MLG's request for fees. While it does not appear that Judge O'Hara heard live testimony, he reviewed many pages of documents and allowed MLG to present any evidence it wanted in support of its request for fees. Based on these ongoing interactions with the law firms, Judge O'Hara weighed a number of factors, including the parties' original representation agreement, the extent to which the Vandenbergs benefitted from MLG's representation, what the circuit court found to be MLG's numerous breaches of fiduciary duties, the efforts and expenses incurred by MLG, and the evidence MLG chose to present—or failed to present—in support of its fee request. Judge O'Hara was in a unique position to calculate the extent to which MLG deserved compensation for the reinstated settlement.

¶ 34    The general rule—absent a statutory or contractual provision to the contrary—is that a discharged attorney is entitled to reasonable compensation for services rendered before discharge,

pursuant to the theory of *quantum meruit. Rhoades v. Norfolk & Western Ry. Co.*, 78 Ill. 2d 217, 230 (1979). *Quantum meruit* recovery "is equitable in nature and is limited to the reasonable value of the services provided." *Thomas P. Valenti, P.C. v. Swanson*, 294 Ill. App. 3d 492, 495 (1998). Under this theory, an attorney receives for fees "as much as he deserves." (Internal quotation marks omitted.) *First National Bank of Springfield v. Malpractice Research, Inc.*, 179 Ill. 2d 353, 365 (1997). Factors that courts usually consider in awarding *quantum meruit* fees include:

> "the time and labor required, the attorney's skill and standing, the nature of the cause, the novelty and difficulty of the subject matter, the attorney's degree of responsibility in managing the case, the usual and customary charge for that type of work in the community, and the benefits resulting to the client." *Will v. Northwestern University*, 378 Ill. App. 3d 280, 304 (2007).

The attorney bears the burden of establishing the value of his services. *Callahan*, 144 Ill. 2d at 43.

¶ 35    In *Rhoades*, a law firm that was discharged without cause sought to recover the full contingency fee specified in its contract with the client. *Rhoades*, 78 Ill. 2d at 226. Our supreme court recognized a client's right to discharge his attorney and noted that the rule in Illinois had been that "the attorney is entitled to full contract fees if the dismissal was without cause." *Id.* at 227-28. The court found, however, that this rule infringed too greatly upon the client's right to discharge the attorney. *Id.* at 229. Also, the client in *Rhoades* had discharged the law firm less than one day after the firm was retained, and "little, if any, legal work could have been done before the discharge." *Id.* To award full contract fees to the firm, the court reasoned, "would under these circumstances raise a question of excessive fees." *Id.* Instead, the *Rhoades* court held that the firm was "entitled to be paid on a *quantum meruit* basis a reasonable fee for services rendered before discharge." *Id.* at 230.

¶ 36    MLG contends that in this case, where it was discharged after performing a substantial amount of work, the only proper award was the full contingency amount, less the hourly fees earned by its successor counsel. But as MLG well knows, a contingency fee often represents a windfall, an incentive for a firm to bear the full risk of loss in cases where the plaintiff has a potentially valuable claim but may not have the funds to advance the litigation. As such, contingency fees often bear little relation to the true value of the time a firm has spent on a case, measured in hours the firm expended multiplied by a reasonable hourly rate. While an award of the full contingency fee, less the amount earned by new counsel, may, in some cases, be an appropriate fee award for counsel terminated before the conclusion of litigation, the authorities MLG relies on do not stand for the proposition that a circuit court is required to calculate a fee award in this manner.

¶ 37    In *DeLapaz*, 394 Ill. App. 3d at 975-76, *Will*, 378 Ill. App. 3d at 306, and *Wegner v. Arnold*, 305 Ill. App. 3d 689, 694-97 (1999), for example, the court did not decide *as a matter of law* that the departing firms were entitled to an award of the full contingency amount in the fee agreement, less the amount earned by their replacements. Rather, in *DeLapaz* and *Will,* the circuit court, exercising its discretion, determined that such an award was appropriate under the particular circumstances of those cases, and this court then deferred to those determinations. *DeLapaz*, 394 Ill. App. 3d at 976 (explaining that "the *specific facts of the instant case* support the trial court's exercise of discretion to adopt the exception to the general rule and award the discharged firm the contingent fee" (emphasis added)); *Will*, 378 Ill. App. 3d at 306 (noting that the firm seeking compensation had submitted a "detailed fee petition" itemizing, to the fraction of an hour, the nearly two thousand hours spent on the case by five attorneys, two paralegals, and three law clerks). In *Wegner*, we reversed the circuit court because it had erred in ruling that a

*quantum meruit* award to a discharged attorney could *never* be based on the contingency amount and that a discharged attorney could only recover on a dollars-times-hours basis. *Wegner*, 305 Ill. App. 3d at 697 (noting that "an attorney discharged immediately prior to settlement *may* be entitled to the contract fee as the reasonable value of his services" and "*the circumstances of the present case* indicate that this is an appropriate case for that rule" (emphases added)). None of these cases suggest that a circuit court is required to award fees on a contingency amount basis.

¶ 38    MLG also argues that Judge O'Hara erred, as a matter of law, in denying the firm fees based on what the circuit court viewed as 11 breaches of the firm's fiduciary duties to the Vandenbergs. These 11 specific breaches of fiduciary duty generally can be categorized as improperly charging legal fees as expenses, failing to obtain the Vandenbergs' consent for bringing in other lawyers, putting the $25 million settlement at risk, and putting the firm's interests ahead of the Vandenbergs in the posttrial proceedings. These are serious breaches that the circuit court was entitled to consider. While MLG disagrees with the circuit court regarding what disclosures the firm was required to make to its clients, it does not contend that any of the court's findings were contrary to the record.

¶ 39    We agree with MLG that, contrary to the Vandenbergs' assertions on appeal, not every breach of fiduciary duty requires a complete forfeiture of *quantum meruit* fees. MLG cites our supreme court's decision in *In re Marriage of Pagano*, 154 Ill. 2d 174, 190 (1992), for the proposition that the question is whether the breach is "so egregious as to require the forfeiture of compensation by the fiduciary as a matter of public policy." But, as the court also recognized in *Pagano*, "when one breaches a fiduciary duty to a principal[,] the appropriate remedy is within the equitable discretion of the court." *Id.* Here, the breaches that Judge O'Hara relied on were certainly factors appropriate for consideration. Moreover, because *quantum meruit* is an equitable remedy,

it was appropriate for the circuit court to consider the conduct of the attorneys in deciding what they deserved to be paid in this case.

¶ 40    We recognize that the adjudication of a firm's fees to zero dollars is relatively uncommon, but this was an unusual case. Based on the record that Judge O'Hara had before him, we cannot say that his order was an abuse of his discretion or that no reasonable person could find that MLG was entitled to receive no fees from a recovery that the firm's own conduct put in serious jeopardy, particularly where, as Judge O'Hara found to be the case here, that firm had repeatedly breached its duty to the Vandenbergs throughout the attorney-client relationship.

¶ 41    In reaching this holding, we do not rely on the legal argument advanced by the Vandenbergs that, under *Rhoades,* an attorney discharged for cause may *never* recover *quantum meruit* fees. In several cases, we have approved a fee award and recognized that "[a]n attorney who is discharged for cause is entitled to a fee based on the reasonable value of his services." *Tobias v. King*, 84 Ill. App. 3d 998, 1001 (1980); see also *Johns v. Klecan*, 198 Ill. App. 3d 1013, 1023 (1990) (finding that attorneys discharged for cause "are entitled, like those discharged without cause, to a *quantum meruit* recovery of fees"). But see *Keck & Associates, P.C. v. Vasey*, 359 Ill. App. 3d 566, 569 (2005) (holding that a discharged attorney may "recover in *quantum meruit* only on a showing that the client discharged him without cause"). The circuit court did not rest its decision on the view that MLG's termination for cause was sufficient to preclude an award of fees, and we are likewise disinclined to do so. However, the fact that the Vandenbergs had clear cause for terminating their representation by MLG was certainly a factor that the circuit court was entitled to consider in awarding *quantum meruit* fees.

¶ 42    To reiterate, Judge O'Hara was in a unique position from which to assess how Mr. McNabola's conduct impacted the Vandenbergs' welfare and ultimate ability to recover in this

unusual case. The factors he considered were appropriate ones, and we cannot say that no reasonable person would have concluded, as he did, that MLG was entitled to no fees.

¶ 43                    B. Under the Terms of Its Own Contract,

MLG Failed to Prove Its Entitlement to Fees

¶ 44    We also find that the representation agreement drafted by MLG and signed by the Vandenbergs provides an alternate basis on which we can affirm the circuit court's decision to award no legal fees to MLG. Under that contract, all that MLG was entitled to was compensation for the time that it spent in connection with the Vandenbergs' claims, and it chose not to make any showing of those hours.

¶ 45    The general rule, expressed by our supreme court in *Callahan*, 144 Ill. 2d at 40, is that "when a client terminates a contingent-fee contract, the contract ceases to exist between the parties thereto and the contingency term, whether the attorney wins, is no longer operative." However, in this case, in contrast to *Callahan*, the parties' contract included a specific provision setting out what MLG was entitled to if the firm was discharged:

> "[Compensation] at the rate of four hundred fifty dollars ($450.00) per hour or their customary hourly rate for the time which they have spent in connection with [the Vandenbergs'] claim, or thirty-three and one-third percent (33 1/3%) of the amount being offered by parti(es) responsible and or their insurers at the time of request to withdraw, whichever is greater."

The obvious purpose of this clause was to address the very situation the parties to this contract found themselves in. The firm was discharged and the question was what compensation, if any, was due.

¶ 46    As the circuit court specifically noted in its order in this case,

"McNabola's contract provided that he be entitled to a reasonable hourly rate of $450.00 per hour; however, McNabola failed to provide any evidence of the total number of hours his firm engaged in the underlying case, thus failing to properly plead and prove Quantum Meruit fees for his hourly rate."

This is an additional basis on which we can and do affirm the order entered by the circuit court.

¶ 47    MLG contends that to the extent the fee agreement remains relevant it should be interpreted to mandate the award of one-third of the $25 million settlement offer, since that offer was previously on the table and, following MLG's discharge, was later reinstated. The fact remains, however, that at the time the Vandenbergs asked MLG to withdraw, there was no offer pending. That months later a previous settlement was reinstated does not alter that reality. MLG offers no legal support for interpreting a contract that it drafted in such a favorable manner. See *Brian Properties, Inc. v. Burley*, 278 Ill. App. 3d 272, 274 (1996) (noting both that "[t]he terms and provisions of [a contract] may not be construed in a manner that is contrary to the plain and obvious meaning of the language used" and "[w]hen a contract is drawn, it is construed against the drafter").

¶ 48    MLG suggested, for the first time at oral argument, that we should remand to give the firm an opportunity to document its hours in this case. The firm had ample opportunity to provide this information to the circuit court in support of its fee request and chose not to. Instead, the firm insisted that it was entitled to a percentage of the settlement and that the only hours that were relevant were those of the new attorneys who were successful in having the settlement reinstated. To allow MLG to now pursue a claim that it clearly chose to reject below would be to give the firm the proverbial second bite at an apple and ignore the rules of forfeiture. MLG has forfeited any right to an award of fees on a dollars-times-hours basis or to ask this court to remand to the

circuit court on this issue. See *Herbert v. Cunningham*, 2018 IL App (1st) 172135, ¶ 37 ("arguments not raised before the circuit court are forfeited and cannot be raised for the first time on appeal"); Ill. S. Ct. R. 341(h)(7) (eff. May 25, 2018) ("Points not argued are forfeited and shall not be raised in the reply brief, in oral argument, or on petition for rehearing.").

¶ 49          C. MLG's Expenses and Fees Owed from the RQM Settlement

¶ 50    In addition to the requested contingency fee, MLG sought reimbursement of $169,610.57 in litigation expenses as listed on exhibit 19 attached to its petition. MLG also seeks $111,715.47 that it claims it is still owed in fees from the RQM settlement.

¶ 51    In its petition for fees and expenses MLG deducted all amounts it had paid to lawyers outside the firm, which it had initially planned to charge as expenses in this case. MLG also reduced the amount it would have been owed under the RQM settlement, to pay the Vandenbergs back for the payment of fees to other lawyers that had been charged to the Vandenbergs as expenses when the RQM case settled. In other words, in each of these amounts sought, MLG has attempted to moot any issue that the firm is charging the Vandenbergs, as "expenses," for work done by lawyers outside the firm. As noted above, these expense charges were part of what the circuit court had found to be a breach of Mr. McNabola's fiduciary duty to the Vandenbergs.

¶ 52    The circuit court did not separately analyze either of these requested amounts in its order but simply denied MLG's petition outright. On appeal, the new attorneys for the Vandenbergs only briefly address expenses and do not at all address the amount due on the RQM settlement, both of which would apparently be due directly from the Vandenbergs rather than from the contingency award that is claimed by their new attorneys.

¶ 53    Although the Vandenbergs' new counsel made a general claim at oral argument that MLG has not shown that the expenses claimed were reasonable, in their brief they questioned only one

specific expense, which was a charge for $600.99 for a lawyer to travel to the 2015 mediation. MLG has withdrawn its request for that expense. The Vandenbergs' new counsel also referenced that there were draft ledgers of expenses produced by MLG in discovery that were not consistent with the petition, but they do not explain why that matters.

¶ 54    Both of these amounts were due to MLG pursuant to contract. MLG had a contingency contract with the Vandenbergs in the RQM case. MLG was entitled to expenses in the Brunswick case pursuant to contract. That contract provides as follows:

"I hereby authorize [MLG] to incur reasonable expenses in connection with the investigation, settlement, adjustment, or prosecution of said cause with interest to accrue at the current interest rate at the financial institution of Fifth Third Bank per annum on the outstanding balance and agree to reimburse [MLG] actual expenses incurred in the prosecution of said cause, regardless of the outcome of the cause."

¶ 55    To the extent that the circuit court might have had some discretion to deny these requested payments despite the contracts, the court provided no explanation for its actions. This seems, to us, to be an abuse of any discretion the court might have had. See *Advocate Health & Hospitals Corp. v. Heber*, 355 Ill. App. 3d 1076, 1078-79 (2005) ("Because the abuse of discretion standard presupposes a reasoned exercise of discretion, the lack of an explanation for [a] reduction often is sufficient to constitute an abuse of discretion when the reasons for an unexplained decision are not apparent from the record.").

¶ 56    The concurring justice has suggested that the case be remanded for an evidentiary hearing as to the reasonableness of the listed expenses. However, this matter was extensively briefed in the circuit court. In its verified petition, MLG listed the expenses it had incurred and for which it was seeking reimbursement. The Vandenbergs' new counsel had every opportunity to question the

reasonableness of some or all of those expenses or to seek an evidentiary hearing and they did neither. On appeal, for the first time, they asserted one objection to one expense and the request for any reimbursement for that expense was withdrawn. Just as MLG has forfeited its right to present evidence of hours expended, the Vandenbergs have forfeited their right to object to specific expenses that MLG has claimed were incurred. See *supra* ¶ 48.

¶ 57     Accordingly, we vacate that portion of the court's order denying expenses and order the Vandenbergs to pay MLG $169,610.57, less the $600.91 that MLG has waived on appeal, plus interest, as provided in the parties' contract. We also vacate that portion of the circuit court's order that denied the $111,715.47 that MLG claims it is still owed by the Vandenbergs for the RQM settlement and order payment of that amount to MLG.

¶ 58                                                IV. CONCLUSION

¶ 59     For the above reasons, the judgment of the circuit court is affirmed in part and reversed in part. The circuit court's denial of attorney fees is affirmed. Its denial of litigation expenses and the $111,715.47 owed on the RQM settlement is reversed as stated above. The case is remanded to the circuit court for calculation of what interest may be due on the outstanding payment of expenses. The motion, taken with the case, to strike portions of the Vandenbergs' brief is denied.

¶ 60     Affirmed in part and reversed in part. Remanded for calculation of interest.

¶ 61     JUSTICE GORDON, specially concurring:

¶ 62     This is a case of first impression in Illinois concerning a lawyer's forfeiture of attorney's fees as a result of a breach of his fiduciary duties in a personal injury case, where the client received a $25 million settlement while the jury was deliberating. I concur with the decision of the majority, but I do not agree with the analysis made by the majority in reaching its decision and as a result, I

must respectfully write separately.

¶ 63    In the case at bar, McNabola does not challenge the trial court's determination that he failed to perfect his attorney's lien; he challenges the trial court's decision denying his petition for fees and expenses under the theory of *quantum meruit*.

¶ 64    *Quantum meruit* is based on a client's implied promise to pay for services of value. *In re Estate of Callahan*, 144 Ill. 2d 32, 40 (1991). Otherwise, the client who receives valuable services without paying for them would be unjustly enriched. *Callahan*, 144 Ill. 2d at 40. Under this theory, an attorney receives for fees "as much as he deserves." (Internal quotation marks omitted.) *First National Bank of Springfield v. Malpractice Research, Inc.*, 179 Ill. 2d 353, 365 (1997). Factors to consider in determining *quantum meruit* fees include

> "the time and labor required, the attorney's skill and standing, the nature of the cause, the novelty and difficulty of the subject matter, the attorney's degree of responsibility in managing the case, the usual and customary charge for that type of work in the community, and the benefits resulting to the client." *Will v. Northwestern University*, 378 Ill. App. 3d 280, 304 (2007).

The attorney bears the burden of establishing the value of his services. *Callahan*, 144 Ill. 2d at 43.

¶ 65    Plaintiffs point out that the trial court found that McNabola had breached his fiduciary duty 11 times, and therefore, he was discharged for cause and not entitled to attorney fees under the theory of unjust enrichment. They argue that a discharged attorney " 'could recover in *quantum meruit* only on a showing that the client discharged him without cause,' " (quoting *Keck & Associates, P.C. v. Vasey*, 359 Ill. App. 3d 566, 569 (2005)).

¶ 66    A fiduciary relationship exists as a matter of law between an attorney and his or her client, and it is incumbent upon the attorney to exercise the utmost good faith and fairness in dealing with

the client. *Coughlin v. SeRine*, 154 Ill. App. 3d 510, 515 (1987).

¶ 67    "[W]hen one breaches a fiduciary duty to a principal[,] the appropriate remedy is within the equitable discretion of the court." *In re Marriage of Pagano*, 154 Ill. 2d 174, 190 (1992). "While the breach may be so egregious as to require the forfeiture of compensation by the fiduciary as a matter of public policy [citation], such will not always be the case." *Pagano*, 154 Ill. 2d at 190. However, several appellate court cases have found that, as a matter of public policy, "a willful and deliberate breach of a fiduciary duty requires complete forfeiture of all compensation during the period of the breach." *LID Associates v. Dolan*, 324 Ill. App. 3d 1047, 1071 (2001); see also *ICD Publications, Inc. v. Gittlitz*, 2014 IL App (1st) 133277, ¶ 58; *Tully v. McLean*, 409 Ill. App. 3d 659, 681 (2011); *ABC Trans National Transport, Inc. v. Aeronautics Forwarders, Inc.*, 90 Ill. App. 3d 817, 838 (1980). But see *Monotronics Corp. v. Baylor*, 107 Ill. App. 3d 14, 20 (1982) (finding that the trial court had not abused its discretion in refusing to order full forfeiture). "The purpose of ordering forfeiture of a fiduciary's compensation earned during the period of a breach is not to compensate the injured party but rather to deprive the wrongdoer of the gains from the breach of duty and to deter disloyalty." *Tully*, 409 Ill. App. 3d at 681.

¶ 68    The discharge of an attorney for cause is not necessarily a factor in determining whether a lawyer is entitled to legal fees unless the trial court makes a determination of "cause." In two of the cases cited in the majority opinion—*Johns v. Klecan*, 198 Ill. App. 3d 1013 (1990), and *Tobias v. King*, 84 Ill. App. 3d 998 (1980)—the trial and the appellate court never made a finding that the firing of the lawyer was for cause or not for cause. The client in the *Johns* and *Tobias* cases in discharging their attorneys indicated it was for cause, but never specified what the cause was. In the *Johns* case, the clients retained as their attorney Nick Blase, the mayor of Niles. Blase referred the case to Fred Lambruschi, a noted trial lawyer, and the client was not happy with that referral.

The fact that a client is dissatisfied with a lawyer's service does not necessarily mean that the lawyer did something wrong and certainly may not be an important factor in determining a breach of a fiduciary duty unless the trial court makes a determination of cause.

¶ 69    In *Keck & Associates, P.C. v. Vasey*, 359 Ill. App. 3d 566 (2005), the appellate court made a statement that a discharged attorney "could recover in *quantum meruit* only on a showing that the client discharged him without cause." *Keck*, 359 Ill. App. 3d at 569. However, the appellate court in that case misinterpreted the Illinois Supreme Court case of *Rhoades v. Norfolk & Western Ry. Co.*, 78 Ill. 2d 217 (1979). In *Rhoades*, the Illinois Supreme Court made a determination that the law firm seeking fees did nothing wrong and therefore was discharged without cause and was entitled to *quantum meruit* fees. The court never stated that an attorney who is discharged for cause is entitled to no fees as a matter of law. I do not consider the *Keck* decision to be the law in Illinois.

¶ 70    In the case at bar, the trial court found that McNabola breached his fiduciary duty 11 times and that these 11 breaches showed cause to require a forfeiture of all legal fees. Although the trial court did not use the words "willful and deliberate breach of a fiduciary duty," the breaches in the case at bar are of such a magnitude that they certainly can be considered to be willful and deliberate. As a result, I cannot say that no reasonable judge would not have found the forfeiture of all the legal fees in this case. A reviewing court may affirm on any basis found in the record. *People v. Begay*, 2018 IL App (1st) 150446, ¶ 35; *People v. Daniel*, 2013 IL App (1st) 111876, ¶ 37 ("we may affirm on any basis appearing in the record, whether or not the trial court relied on that basis or its reasoning was correct"). The record in this case supports the ultimate result of the trial court because McNabola's conduct illustrated a willful and deliberate breach of his fiduciary duty to the plaintiffs.

¶ 71    An additional basis for a concurrence in the trial court's decision is the fact that the 11

breaches illustrate that McNabola did not come before the court with "clean hands." *Quantum meruit* is an equitable remedy, and the doctrine of unclean hands precludes a party from taking advantage of its own wrongs (*Long v. Kemper Life Insurance Co.*, 196 Ill. App. 3d 216, 218 (1990)). It is an equitable doctrine that bars relief when the party seeking that relief is guilty of misconduct in connection with the subject matter of the litigation. *Thomson Learning, Inc. v. Olympia Properties, LLC*, 365 Ill. App. 3d 621, 634 (2006). It only applies when the party's misconduct rises to a level of fraud or bad faith. *Thomson*, 365 Ill. App. 3d at 634. Certainly, McNabola's conduct constituted bad faith. The court must look to the intent of a party to determine whether it acted with "unclean hands." *Thomson*, 365 Ill. App. 3d at 634. The doctrine is only available when the misconduct was "toward the party against whom relief is sought and *** connected with the transaction at issue in the litigation." *Zahl v. Krupa*, 365 Ill. App. 3d 653, 658 (2006). In the case at bar, the 11 breaches certainly constitute "unclean hands" and would preclude McNabola from obtaining any fees under the equitable theory of *quantum meruit*.

¶ 72   The trial court also denied McNabola's fee petition because he failed to provide any documentary evidence of the total number of hours he worked on the case. However, detailed time records are not always necessary to maintain a *quantum meruit* claim, as long as the attorney presents sufficient evidence from which the trial court can determine a reasonable fee. See *Anderson v. Anchor Organization for Health Maintenance*, 274 Ill. App. 3d 1001, 1008 (1995); see also *Johns*, 198 Ill. App. 3d at 1024 (evidence relating to the time and labor element can be considered along with evidence relating to the additional factors for determining fees). Since the trial court did not hold an evidentiary hearing, the trial court erred in denying McNabola's fee petition for his failure to provide any documentary evidence of the hours he worked.

¶ 73   In conclusion, I cannot say that the trial court abused its discretion in finding that McNabola

was not entitled to any legal fees under the theory of *quantum meruit* in a case where McNabola performed a tremendous amount of work over many years and tried a case before a jury and obtained a $25 million settlement.

¶ 74    As to McNabola's expenses, I agree with the majority that he should be awarded his reasonable expenses, and I would remand the issue of reasonable expenses back to the trial court to make a determination of reasonable expenses. I do not believe that the list of expenses should be awarded without a hearing to determine whether they are reasonable expenses related to this litigation.

¶ 75    I would affirm in part, reverse in part, and remand to the trial court to conduct an evidentiary hearing on the expenses.

---

**No. 1-19-0544**

---

| | |
|---|---|
| **Cite as:** | *Vandenberg v. RQM, LLC*, 2020 IL App (1st) 190544 |

---

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 10-L-003188; the Hon. James N. O'Hara, Judge, presiding. |

---

| | |
|---|---|
| **Attorneys for Appellant:** | Edward W. Feldman and Mary Eileen Cunniff Wells, of Miller Shakman Levine & Feldman LLP, of Chicago, for appellant. |

---

| | |
|---|---|
| **Attorneys for Appellee:** | Joseph A. Power Jr., James I. Power, and Joseph W. Balesteri, of Power Rogers & Smith, L.L.P., and John B. Kralovec and Joseph M. Conboy, of Kralovec, Jambois & Schwartz, both of Chicago, for appellees. |

---